John R. Weed Taylor County Attorney Perry
QUESTIONS:
1. May the Board of County Commissioners of Taylor County build or maintain cattle gaps on or across county roads with county funds?
2. May the board of county commissioners build or maintain such cattle gaps on or across county roads if the county is reimbursed by the cattle owners?
SUMMARY:
A board of county commissioners, in the absence of a general or special law so providing, is not authorized by statute to build or maintain cattle gaps on or across county roads or to appropriate and expend county funds for such a purpose; rather, the responsibility of erecting fences, gates, gateways or openings, and cattle guards or cattle gaps lies with and at the expense of private livestock owners.
Your questions are answered in the negative.
AS TO QUESTION 1:
This office has previously stated that noncharter counties may exercise only those powers which have been conferred on them by general or special law. See, e.g., AGO's 079-11, 078-131, and 077-81. Noncharter counties, however, have been granted the general authority to maintain and control those roads under their jurisdiction and to expend funds for the construction, maintenance, and development of such roads. Section 125.01(1)(m) and (r) and (3), F. S. The Florida Transportation Code, Chs. 334-339, F. S., which generally regulates transportation within the state, vests in the boards of county commissioners the general superintendence and control of the county roads (as defined in s.334.03[23]) and structures within their respective counties and authorizes the county commission to establish new roads, to change and discontinue old roads, and to keep the same in good repair in the manner provided therein. Section 336.02. See ss. 334.03(23), which defines the county road system, 335.01, and 336.01. See also
s. 588.13(4), F. S., defining `public roads' for purposes of ss.588.12-588.25, F. S., to mean, inter alia, roads maintained by the counties, including the full width of the right-of-way; s.334.03(7), which generally defines `roads' to include not only the streets and highways and other ways open to the public, but also `the roadbed, right-of-way, and all culverts, drains, sluices, ditches, water storage areas . . . embankments, slopes, retaining walls, bridges . . .,' and s. 334.03(9), which defines right-of-way. Section 336.021(3) declares that the acquisition, construction, and maintenance of roads and streets fulfills a county purpose and authorizes a county to pay the costs and expenses thereof from county general funds, special taxing district funds, or such other funds as may be authorized by special or general law. See s. 334.021(1), which provides in pertinent part that every county which has the authority to expend funds for public transportation or for the maintenance, construction, or development of public roads and other ways open to travel by the public is authorized to expend the same for the general purpose of developing an integrated, efficient, and well-balanced transportation system in the state, the provisions of any statutes or other government ordinance and regulations notwithstanding, provided, inter alia, that public funds shall not be expended in such manner or for such projects as would violate the State Constitution. Section 334.021(2). In light of the county's general authority to construct and maintain roads under its jurisdiction, you inquire whether a county may construct or maintain cattle gaps on or across county roads.
While the county possesses the general authority to expend certain county funds for the construction or maintenance of county roads, I am not aware of any judicial decision in recent years which has interpreted this responsibility to include the construction of cattle gaps or guards on or across county roads. Under the provisions of s. 336.60, F. S., a board of county commissioners may permit the construction of gates across a county road whenever, in the opinion of the county commission, the same will not unnecessarily interfere with the public travel; furthermore, the commission may prescribe the place where the gate may be placed and the manner of construction and maintenance thereof with the right being reserved to withdraw such permit upon the giving of at least 30 days' notice to the parties to whom the permit was originally granted. However, as this office stated in AGO 075-144, research and study has failed to reveal that the term `cattle gap' has been found to be the equivalent of a gate. In fact, the statutes impliedly recognize that a distinction between the two terms exists. See s. 704.02, F. S., which provides that the owner or tenant of the dominant tenement using the statutory easement provided for in s. 704.01(2), F. S., when requested by the owner of the servient tenement, shall erect and maintain either a cattle guard or a gate at each place where the easement intersects a fence. See also s. 588.011, F. S., which, in defining a `legal fence,' provides that such a fence may include gateways or
openings and prescribes different requirements for each, and s.588.011(3)(b), which provides that `any such opening shall be equipped with a cattle or livestock guard at least 6 feet in width extending to each end of the opening.' I thus cannot say that the foregoing provisions of s. 336.60 authorize a county to construct or maintain or to permit the construction of cattle gaps on or across county roads or to expend county funds therefor.
Moreover, with the enactment of the so-called Warren Act in 1949,see Ch. 25236, 1949, Laws of Florida, now codified as ss.588.12-588.25, F. S., the responsibility for keeping livestock off the public roads of the state by constructing fences has been placed upon the owners of the livestock. See s. 588.13(4), as amended by Chs. 77-200 and 79-400, Laws of Florida, defining `public roads' for the purpose of this act. Section 588.14 prohibits any owner (any person owning or having custody or in charge of livestock) from permitting his livestock to run at large on or to stray upon the public roads of the state. As the Legislature stated in s. 588.12, `[t]here is hereby found and declared a necessity for a statewide livestock law embracing all public roads of the state and necessity that its application be uniform throughout the state, except as hereinafter provided.' Thus the Legislature placed the responsibility of constructing and maintaining fences, including cattle guards or `gaps,' see s.588.011(3), F. S., to keep livestock off the public roads, as defined by ss. 588.13(4) and 334.03(7), F. S., on the owners of the livestock and not on the county. `Public roads,' as used in ss. 588.12-588.25, are defined as `those roads within the state which are, or may be, maintained by the state, a political subdivision of the state, or a municipality, including the full width of the right-of-way, except those maintained, and expressly
exempted from the provisions of [Ch. 588], by ordinance of the county or municipality having jurisdiction.' (Emphasis supplied.) Section 588.13(4), as amended by Chs. 77-200 and 79-400, Laws of Florida. While the foregoing definition of `public roads' would appear to permit a county by ordinance to maintain and expressly exempt a road over which it has jurisdiction from the provisions of Ch. 588, no opinion is expressed in this regard. Such definitional provision, however, does not purport to empower a county to build or maintain cattle gaps on or across county roads or to expend county funds therefor.
Furthermore, a special act relating only to Taylor County also requires the fencing in of livestock and makes the owner liable in damages for any injuries sustained by any person as a result of his willful or negligent failure to do so. See Ch. 63-1996, Laws of Florida. The definition of `public highways' within the act contains no limited exception as does s. 588.13(4), F. S. 1979.See s. 1(5) of Ch. 63-1996, which defines `public highways' as `those roads, highways or streets within Taylor County, which are or may be open to travel by the public.' Thus, Ch. 63-1996 also imposes upon the owners of livestock in Taylor County the responsibility of keeping livestock off the public highways as defined therein. I am not aware, however, of any other special act or provision thereof which authorizes Taylor County to construct cattle gaps on or across county roads or to expend county funds therefor, nor has any such special act been brought to my attention. In an informal opinion to Mr. Don Dansby, former county attorney for Taylor County, dated March 21, 1972, this office therefore concluded that, as the Legislature has placed upon private owners in Taylor County the legal duty of keeping livestock off the highways of the county and the duty to construct fences for this purpose — and, where appropriate, cattle guards — it would be an unwarranted use of county funds to construct cattle guards to keep cattle off the highway. Thus, this office stated that, in the absence of any special act authorizing a county to construct and maintain, at county expense, cattle gaps on or across county roads, the county could not do so.
Although Ch. 588, F. S., and the Florida Transportation Code, Chs. 334-339, F. S., have been amended in some particulars not material to this opinion since the issuance of AGO 075-144 and the informal advisory opinion to Mr. Dansby, the reasoning and conclusions of the foregoing opinions continue to be valid. Based upon the foregoing, I must conclude that, in the absence of any general or special law so providing, a county is not authorized by statute to expend county funds to build or construct cattle gaps on or across county roads; rather, the responsibility of erecting fences, gates, gateways, openings, and, where appropriate, cattle guards to keep livestock off the county roads has been placed by the Legislature on the livestock owners. Such fences, gates, cattle guards, or cattle gaps should, therefore, be physically located on private land and not on public roads. County funds, however, cannot be used for the construction of such cattle gaps on private land. See AGO 073-222, in which this office stated that a county cannot legally provide minor work or repairs on private roads and cannot expend funds therefor, and AGO 078-88, stating that, in order for a board of county commissioners to expend funds for the construction and maintenance of a road, the road must be a `public' one.
AS TO QUESTION 2:
You also inquire as to whether a county may construct or maintain a cattle gap on or across a county road if it is reimbursed by the cattle owners. In question 1 I concluded that there is no statutory authority which authorizes Taylor County to construct cattle gaps on public roads, including the right-of-way; rather, such cattle gaps must be located on private land. Furthermore, county funds cannot be used to construct such cattle gaps on private land. I am not aware of any statutory provision which would authorize the county to construct such cattle gaps on public roads and expend county funds therefor `if reimbursed by the cattle owners.' In the absence of any general or special law so providing, the county may not do so. Moreover, in exercising its powers and duties regarding the supervision of county roads and structures as provided in the State Transportation Code, the county does `not serve any particular individual, but only the state and the public generally.' Owen v. Baggett, 81 So. 888, 889
(Fla. 1919). Thus, the county is presumed to hold the road right-of-way in trust for the people at large. See Marion County v. Ray, 144 So. 845 (Fla. 1944). As the Florida Supreme Court stated in the early case of Lutterloh v. Cedar Keys, 15 Fla. 306
(Fla. 1875), `[t]he [public] authorities have no right to appropriate the public streets to any other uses than that of travel, or right of way, to which they were dedicated . . . .' Seealso AGO 072-121.
Some encroachment upon a road's right-of-way has been approved by express legislative authority. See e.g., s. 362.01, F. S., which permits a chartered telegraph or telephone company to erect posts, wires, and other fixtures for telegraph or telephone purposes on or beside any public road or highway, provided that such fixtures do not obstruct or interfere with the common uses of the streets and highways, and Peninsular Telephone Co. v. Marks, 198 So. 330
(Fla. 1940). See also s. 336.60, F. S., which authorizes a county commission to permit gates across county roads, provided that the gates will not unnecessarily interfere with public travel. I am not aware, however, of any statutory provision which permits the construction by a county of a cattle guard or cattle gap on or across a public road or right-of-way or on private land for the benefit of the private landowner. In fact, the Legislature has placed the burden of keeping livestock off the public roads on the private livestock owners rather than on the county, thereby indicating that the construction of these fences — and, where appropriate, cattle guards — constitutes a private as opposed to public purpose. Thus, such construction on or across a public road would appear to constitute an unlawful encroachment or obstruction in the absence of specific statutory authorization. Cf. AGO 072-121, in which this office stated that it was beyond the legal authority of the board of county commissioners to allow the construction of an entrance shed by a church to extend into the county road right-of-way, as such would serve a private purpose not within the purview of the `county purpose' for which the right-of-way is dedicated. Moreover, to permit a cattle or livestock owner to burden a public road or highway with a cattle gap which, in any event, cannot substitute for the legal fence that he is required to construct to keep his livestock from running at large, would, in my opinion, be in derogation of the legislative intent expressed in Ch. 588, F. S., and Ch. 63-1996, Laws of Florida, that it is the responsibility of livestock owners to restrain their livestock from running at large. Your question is therefore answered in the negative.
In summary, therefore, I am of the opinion that a board of county commissioners, in the absence of a general or special law so providing, is not authorized by statute to build or maintain cattle gaps on or across county roads or to appropriate and expend county funds for such a purpose; rather, the responsibility of erecting fences, gates, gateways or openings, and cattle guards or cattle gaps lies with and at the expense of private livestock owners.
Prepared by:
Joslyn Wilson Assistant Attorney General